Next case on the calendar is Brimelow v. New York Times Company. I believe the lawyers are in person for that one. Okay, Mr. Kelly, I see you reserved three minutes for rebuttal. Go ahead. I'd like to go over three minutes and talk about three issues in my argument today. One, the true personality of this case. Two, the correct way of dealing with factors. And why we have to employ a constitutional analysis. Turning to the first issue, the submit, it would violate Rule 12 to deny or to overlook. And in the posture of this case, three facts must be taken as true. One, there is, in fact, valid evidence for genetic differences amongst the races. Two, those genetic differences do impact politically sensitive aspects of human nature, such as intelligence. And three— Counsel, I'm sorry. I don't think your argument is that your client's views need to be correct in order for him to have a defamation claim, right? Maybe we could talk about the legal issues about the claim of defamation. Your Honor, my argument does not mean—my point does not mean he has to be correct to win the danger. But I submit, with the First Amendment interest in unenviable, robust, and liable debate, that if there are taboos out there that interdict discussion of sensitive issues, the Court must come down in favor of the man pushing this— Why isn't the term white nationalist? New York courts have said over and over again. I could cite you half a dozen cases. The New York Times cited them in their briefs. There's many more others that terms like racist, anti-Semitic, white nationalist are opinions that are not actionable. What case do you cite for the proposition that those types of terms are actionable for purposes of a defamation? Which case? Which case? It's context is everything. White nationalist could be a term that has some of the benignities of what people are trying to defend their interests. But that's— It shows that there's a range of meanings that one could attach to white nationalist. And if that's the case, why isn't picking—making that statement a matter of a statement of opinion? It's in the eye of the beholder. Your Honor, there's a range of meanings to the term black male, too. But if you use it in such a way, meaning with being—accusing someone of an individual crime, and the viewpoint is taking money from them, you have removed the possibility that you're using it in more benign ways, such as trying to take a hard position, wrong ways, or— Your client has taken the position—correct me if I'm wrong—that there's a problem with the immigration system because it's letting in too many minority people, Hispanics and others, and diluting the population that should be white. Isn't that essentially what your client's position is taking? What your client is taking? Your Honor, that's— In an alienation, and also as reported by his statements in the Southern Poverty Law Center website. The Southern Poverty Law Center? You mean the blog post on the left corner? No, but I'm talking about your client's statements that are presented. My client has taken the position that a nation is, properly speaking, an interrelation of ethnicity and culture. That's a bit more nuanced than just the anti-immigrant—my client's the immigrant himself. I think your argument was—I mean, you were suggesting that the context might matter. And so sometimes white nationalists might be a term of abuse, might be a matter of commentary. But you were suggesting that some context refers to something specific and could be factually determined. Right? Your argument that in the context of this particular article, it was a factual—it seemed to be a factual statement. The article seemed to be reporting facts. So you don't deny that sometimes it could be a matter of opinion. So why don't you talk a little bit about why the context indicated that in this context it was a factual statement. I have an opinion. I do want to make the point that the whole purpose of the fact-opinion distinction is to ensure that a robust debate takes place. If the court becomes aware— I get that argument. So your argument is that here, if we limit defamation law, we're actually inhibiting debate, whereas normally the logic of New York Times v. Sullivan is to promote debate. But let's assume that we're not revisiting New York Times v. Sullivan now. I'd like to know a little bit more about the question of whether the context indicated that White Nationals, in this context, was a factual statement. Right. So the most important factor in the New York law is the overall context. And I'm unaware of any case by the New York Court of Appeals which has upheld a dismissal where there has been a factual assertion in a news article. You're skipping—you're begging the question. The question is, is it a factual assertion or is it an opinion? And one of the ways we decide if—one of the ways we decide if an assertion is factual or opinion is by seeing where it's placed in a newspaper. Is it an op-ed or a letter to the editor? That's one thing. If it's in a news article, that's quite another. And I would point out, in several cases, it's all in the evidence. Well, news articles make reference to so-and-so who has espoused racist views or White Nationalist views. That could be something that you would see in a news article, right? The idea that those terms are never used in a news article, I'm not sure I would agree with that, right? But in a news article in the New York Times which makes a commitment to asserting only facts to its readers— And this goes, I guess, to the issue of actual malice. Has he not embraced the term, according to his own definition, White Nationalist, under certain circumstances? I could read you some of his quotes that they cite. These are his statements from the website. People aiming to defend their interests of American Whites, as they're absolutely entitled to do. That's how he defined a White Nationalist. He said, I do think that Whites have common interests they can legitimately defend. I think that White Nationalism in the sense of representing White interests is a legitimate position. You know, the racial and cultural identity of America is legitimate and defensible. My heart is with civic nationalism, but my head is with racial nationalism. These are statements on the VDAR website that they say your client has made. And I object to those statements at this stage of the game. Okay, let's put that aside. Assuming they could be considered, wouldn't that show that your client has— Again, he tries to—he has his own definition of what it means, but has embraced the concept of White Nationalism. This is playing show game with words, Your Honor, respectfully. It's like saying that Greenbelt Construction had sometimes used, hey, you know, I adhere to Blackmail. But he's clearly indicating, wait, I take part in argumentations. And then you accuse him of something else entirely, which is he's breaking the law. That's right. So that's a fine example, right? So the word Blackmail sometimes can just mean you are, you know, trying to extort me and use it in a colloquial sense. And sometimes it can refer to a crime. And you look at the context to determine whether it's being used as a factual statement or not. And your argument here is that it's a news article that presents itself as presenting facts, and so therefore it's in a factual context. So what is the definition of White Nationalism that is provably false that you're saying the context indicates that The New York Times was using in this particular article? That my client has engaged in racism. I think racism that he's espoused white supremacy, that he's espoused the separation, the forceful separation of race from segregation. That's exactly the way that the SPLC uses it. That's exactly the definition that the New York Times uses. So you're saying the Southern Poverty Law Center uses an objective definition, and The New York Times is making reference to that and would be using that definition. That's right. The Southern Poverty Law Center endorses one specific meaning here of White Nationalism. In The New York Times, upon objection from my client that I am not a White Nationalist, let alone an open White Nationalist, in response they go back and they look at the SPLC website. And in fact they say, Daniel, you are, because the SPLC says you are. And they know that the SPLC is a disreputable organization. The SPLC condemned their own items for publishing on the science of racial differences. Well, can I ask you also about that complaint? So it does originally say he's an open White Nationalist, and the district court – and The New York Times changes that to White Nationalist. The district court says, well, open White Nationalist is a factual statement, and it is provably false. And so the district court concluded that open White Nationalist is actionable. But then the district court dismissed the whole complaint. So why does the district court dismiss the complaint insofar as it alleges defamation for being called an open White Nationalist? Well, Mr. Your Honor, I cannot follow the argument of the district court. It seems to say that, well, this is actionable, but oh, when they hyperlink, they negate context. Well, first of all, it has a problem at so many levels. The question I have is whether open means declared by the individual. The question I have is whether the word open connotes an affirmative declaration on the part of your client or just the fact that he doesn't hide his views. Well, I think the people are somewhat related on it. They're related, but they're different, right? It's one thing to not say whether you're open or not. It's another thing to be – to make the statements that you're making openly without affirmatively sort of coming out of the closet. Well, I understand – I think I understand your point, Your Honor, and my response is if you're not self-avowing White Nationalists and you have a more nuanced position such as a nation is an interrelation of culture and ethnicity, then there's something covering. I mean you're not – there's something there that says – that's concealing or obscuring what you would otherwise be an open White Nationalist. Isn't there? I think that's – actually, unless you're completely self-avowing and open about it, then – So you're saying there's always some kind of concealment if you're not an admitted White Nationalist? I think – But even if you express views that are – let's say you – I understand that you have an argument that he doesn't express inarguably White Nationalist views. Well, let's say somebody did, but then also denied being a White Nationalist. Would we not say that the person is an open White Nationalist in the sense of being uninhibited or outspoken about those issues? I think that would have to be a question of fact. It would be unsympathetic resolution on who goes. Would that be the case? What would we say? I think that would be a question for the jury. Because in some contexts it could mean uninhibited. In some contexts it could mean self-professed. Is that – so that's why it becomes a jury question? I think that's – I think that's fair. So you were saying at the beginning of your statement that one of the issues you were going to cover is why you allege actual malice. And so I'd actually like you to address that because as I see the complaint, you seem to say that The New York Times didn't follow ordinary standards of care in choosing its words. And that sounds to me a lot more like negligence rather than actual malice. So why do – why should we conclude that there are allegations that are sufficient to show actual malice on the part of The New York Times? Because like the failure case, you have personal bias combined with an extremely partial dissenters. And the dissenters in one case – there are five articles in it. There are four letters sent pre-litigation protesting the characterization of my client. Each one is kicked back. No letters to the editor are ever published. The New York Times is reminded that they themselves praised Gregoire when he published the allegation for taking on the sensitive issue of race and ethnicity and immigration. None of that ever makes it into the record. They refuse to abide by their editorial policy or knowledge of corrections. They never correct their condition. They never retract their comment. They rely upon a highly suspect organization like the SPLC, which has condemned their own records. At a time when the SPLC's credibility is significantly lower, this is a – I mean – It sounds like there's just a difference of viewpoint here. They're debating back and forth. And your client doesn't like what The New York Times has done. That's different. I mean the fact that your client didn't agree with these statements that are made by The New York Times or didn't, you know – or rejected and didn't get a response and didn't have a dialogue, I don't understand how that's relevant. Well, I think one would always object to being a liar and a defamatory. So – Yeah, you could be – and you could object to stories that are defamatory but true. You could object to being the subject of an attack based upon, you know, something that is done in good faith or certainly is done without malice. But there is a balance here if you continually breach your own ethical code. If you continually say, we, The New York Times, delegate facts. We have the circuits of certain states. Yeah, but how did The New York Times – let's start with knowledge rather than recklessness. How did The New York Times know that what they were saying was false? Given the plethora of information that they had about your client and about what your client's own words had said and the fact that they had read the alienation and indeed actually I think – I believe gave a favorable review of it. I'm sorry. I don't – Given all the information that was out there about your client, how do you establish that The New York Times knew that what they were saying was false? Your Honor, I think you must be more clear with respect to what information you're saying my client is out there. My client denies being a white supremacist. If you're going to tell my client – if you're going to make a decision, if someone is going to make a decision that my client is a white supremacist, we're citing an IQ test. We're just going to make a martial assessment of the value of your event. You better be able to show me an IQ test that has whites in the top. All right, thank you. Sorry. I mean public figures deny accusations against them all the time. The New York Times publishes articles about politicians and whatever, and they probably would make a denial. And then an article might show that they were lying at the time. So it can't be The New York Times is required to agree with everybody's self-characterization, right? They're not required to agree with everybody's self-characterization. I guess my question is usually to show actual malice, you have to show that some – that there was some information out there that The New York Times purposefully decided not to consult that would have shown that their characterization was false. What is that information? Well, one thing, he says I'm – the fact that I publish some people who are white nationalists instead of defending white supremacists doesn't make me an open white nationalist. I don't know whether that makes – Do you deny – does your client – I don't know. Maybe that might make them a little sloppy. Maybe they're being imprecise according to your allegations. But it doesn't seem like they would have known it was false. I mean sometimes people make inferences based on the other people a person associates with. And some of this would show actual malice, right? Well, this goes back to can we trust what the SPLC says? Does your client deny this – Mr. Kelly, does your client deny the statements that I read to you from the VDAR website that were attributed to him? Does he deny making those statements? He denies the context there in the case of white nationalists. All right. And – All right. Thank you. So you think the district court made inferences about those statements that it shouldn't have done on a motion to dismiss? The district court acted as a back liner on one of the motions. All right. Thank you, Mr. Kelly. Ms. Green. Good morning, Your Honors. Amy Green, on behalf of the New York Times. Your Honors, Mr. Grimelow has made a long and prominent career out of controversial speech. And the first amendment gives him a right to do that. But it also gives others the right to critique and speak in negative terms about the controversies that he provokes. The claims here seem to be boiled down to that simple quip of free speech for me but not for thee. His pleadings read as if this is the government prosecuting him for his speech. But what's at stake is five unflattering news articles. And those news articles represent first amendment protected speech on matters of obvious public importance. Two are articles about the ideological influences of people at the top of our government. Two are about public dispute. Yeah, but you don't deny that if in fact it's a factional statement and it's provably false and it's defamatory, then he has a claim, right? I'm sorry, Your Honor. I can't hear you through your mask. Oh, sorry. Does this help? Is this better? Yes. I was saying even though you talk about the first amendment interest, you don't deny that if it was a factual statement that was provably false and it was defamatory, then he would have a claim, right? The New York Times had made a provably false factual statement. And so then I guess – so the district court talks about the article as being opinion-inflected commentary. But if you look at it, it presents – I mean I'm talking about the January 15th article. Let's put aside the other ones that don't mention him by name. So the January 15th article presents itself – it's not just a news story. It's a timeline. It has a bunch of dates and then a factual statement about what happened on those dates. It's hard to imagine anything that would present itself as more factual than that. I mean how does this read like a commentary? Your Honor, the article – it's a news article and it is a recitation of examples of Representative King's actions that are being considered to be racist, which is itself an opinion-laden statement. And the Times, in trying to describe one of those, has to describe who Mr. Brimelow is. And the opinion of Times journalists and many others, a succinct way to describe his ideology was to say that he is a white nationalist. The fact that it's a news story does not exclude the fact that some of those words can be non-actionable. So you're basically saying that it's always non-actionable if you call somebody a racist or a white nationalist or maybe other terms of abuse. Maybe we could think of others like communist or something, right? Like it's always a matter of opinion, and therefore even if it appears in a factual context, you can never sue somebody for defamation. Your Honor, the court is not called on to go that far, and the opinion analysis is so fact-laden that I hesitate to say that. But that's your argument, right? You're saying that this is a factual article. It does present itself as a list of facts. But the reason why we should treat it as an opinion-laden commentary is because there are some adjectives that call for a characterization. And those adjectives are always matters of opinion, even if the context appears in a factual statement. It is our position that the mere allegation that someone is a white nationalist without any of the other factors that could change that, merely saying that someone is a white nationalist, yes, is non-actionable. But there are some contexts when that's a factual statement, right? There are people in the world who are white naturalists inarguably, and there are people who are not inarguably, aren't there? Well, Your Honor, if you can look to, for example, the Buckley case or Hertz, where the court draws a distinction between the idea of saying that someone is a fascist, which it finds to be non-actionable, versus saying that someone is a member of, let's say, a specific fascist party, which could be actionable, even with a provable false statement. It is both specifically definable and it is capable of objective proof. But simply saying that someone has a certain ideology is not actionable. So any statement attributing an ideology to someone is always going to be non-actionable. I think it's going to be very difficult for a court to say that it is actionable because generally speaking, ideologies are socio-political concepts that are open to debate. As Mr. Kelly just conceded, white nationalists have various names. His client has been defined in various names. So you don't think that there's any context in which an allegation of being a white nationalist would ever be a statement of fact? No, I have to say something hypothetical. In this instance, there's no suggestion of private information. But there is a suggestion of private information, isn't there, because it says he was on a panel with Peter Brimlow, a white nationalist. It suggests that there is some basis for that statement. Every other characterization of every other individual mentioned in the timeline is a factual statement. It refers to somebody as a far-right politician, a leader of France's far-right party, an authoritarian leader. It's in kind of neutral terms. It does suggest that the author has some basis for making these characterizations. I would suggest that each of those examples that you've just given are what would be considered non-actionable characterizations of someone. Someone might very well disagree with being described as being far-right, but that doesn't make it actionable. So it's always non-actionable. Well, so then all articles in The New York Times have these terms that call for characterizations, right? So aren't you basically saying that everything in The New York Times is commentary and opinion-laden? No, Your Honor. I think we need to separate and to emphasize and to agree with the idea of opinion as it's used colloquially. And opinion as it is a term of art in First Amendment law. And a factual article just by necessity has to describe the world. It has to use words that would not be considered adjudicable. Whether something is beautiful, whether it is delicious, whether the restaurant is tasteful or garish. News reporting, describing the size of the crowd or the reaction of listeners to a speech has to use words that are incapable of adjudication by the court. What Mr. Grimlow is asking this court to do is to determine as a matter of law that there is one definition of a term like white nationalist that is a correct definition and that is capable of proof to a constitutional standard. I mean, so you have this citation to the Southern Poverty Law Center. I mean, would you say that everything on their website where they characterize somebody as a white nationalist, that's all a statement of opinion? There's nobody who really is a white nationalist. It's always an arguable characterization. I'm not here to defend the SLC, but I will say that the Fourth Circuit recently addressed the case involving the SLC. And it did conclude that their characterization of people as racist white nationalists or hate groups was a fact. And what about the – what I had asked the opposing counsel about, which is the phrase open white nationalist? So the district court said that open white nationalist is a provably false statement of fact and it is actionable. But then the district court just dismisses the claim, and it's not clear to me why it did. So why does the district court dismiss the claim of that open white nationalist? It was my understanding, Your Honors, that the district court dismisses it with actual malice. But if you look at actual malice, my reading of what the district court said about actual malice was that Mr. Grimlow has expressed views that are at least in the universe of white nationalism, and therefore it can't be reckless for The New York Times to characterize them as that. But that argument wouldn't apply to the way the district court views open white nationalists as being an admitted white nationalist, right? So it doesn't seem to me like the logic of its actual malice holding would apply to open white nationalists. Yeah, I think there's two answers I would make to that, Your Honor. The first is that, as you know, we disagree and have challenged the district court's erroneous finding that open white nationalists can only mean that someone has felt without. That simply doesn't fit in the way that it is commonly used. That is one potential meaning of it, but as Mr. Kelly just conceded, there are other ways we want to read that phrasing. And I would just like to say that within the pendency of this appeal, writers on PDAIR have used the phrase openly attached to words in exactly the context that we are arguing here. But it can mean more than just felt without. It can mean that someone makes no effort to hide it. Right, I get that argument. But if, in fact, the district court were right, isn't it odd that the district court just dropped that conclusion that it's actionable? Your Honor, I would be glad to have this report go for a wholesome analysis, but the fact is the court is not obligated to in detail describe all of its findings. And the court does lay out in great detail all the reasons why it finds that Mr. Brimlock has not pointed to evidence in his plea. But just based on the logic of the opinion, it seems to conclude open white nationalist is actionable and then dismisses it without providing a reason. Your Honor, they do find that it is potentially actionable, but the district court finds that the article is not actionable on actual malice points. And then I guess I just have a question about the actual malice finding. So isn't it odd on a motion to dismiss for the district court to read all of these writings and then make its own interpretation as to what they convey or what the ideological position is that they express? Your Honor, I don't read the district court as dismissing the actual malice that way. The court does analyze its writings, but the standard here is has Mr. Brimlock pointed to something in the record? Has he, in his complaint, brought forth properly pleaded materials or evidence or facts that would reasonably rise the level of actual malice, meaning that the Times knew or should have known or should have trusted? That's right. In fact, I asked him about that, whether he had allegations that went beyond negligence and spoke to actual malice. But I guess my question is, you know, the district court didn't say there are no allegations here that show that the New York Times, you know, didn't consult some source that would have shown that his statements were false. The district court goes on to read his writings and say, like, I have this interpretation of what the writings convey and the ideological position they take, and I conclude that it's something that could be referred to as white nationalism in a colloquial sense. Isn't that drawing a lot of inferences against the plaintiff on the 12v6 motion? I think, Your Honor, the court is actually – the court couldn't have just looked at the complaint itself, and there is more than enough basis in the complaint itself to find that he has not actually pled actual malice. Okay. So what's that basis in the complaint? Your Honor, in the complaint, the only thing that Mr. Brimlock has pointed to that might have put the Times on their list of him not being an open white nationalist, if we accept, as Your Honor seems to be doing, the idea that that is potentially actionable, and if we accept, as you dispute, that that can only mean that he is self-about white nationalist, the only thing that Mr. Brimlock has pointed to is his denial that he is a white nationalist. And if you look to paragraph 60 of the complaint, that denial is, in 2018, in an interview with Slate, an article entitled An Interview of Mr. Brimlock, a White Nationalist. And the author says this, quoted in the complaint, truncated and in a misleading way, I think you're a white nationalist. And he doesn't say I'm outrageous, I'm not a white nationalist. In the complaint, paragraph 60, he says, well, my heart is with civic nationalism, but my head is with racial nationalism. And white nationalism is a type of racial nationalism. All right, so I guess my question is this. So if we're on a 12b6 motion and you draw inference in favor of him, and there's one way to read it where he's actually denying being a white nationalist, which he does, he says, my heart is with this other position. So he's arguing that that's what he is. But you could also interpret it the way you're suggesting. On a 12b6 motion, shouldn't we interpret it the way the plaintiff is suggesting? No, Your Honor. First of all, the actual malice standard is a deliberately very high bar. We would need to really bring forward very compelling evidence here in this complaint. And he has not – the only thing he brought forward is that he – So it's enough that there's a statement that arguably could go either way because as long as there are such statements, then he can't plead actual malice. Is that right? No, Your Honor. I don't think that is sufficient. Oh, but – There are numerous cases of malice, and here the model is not sufficient. No, no, I agree. That's what I was saying. So it's not that the district court is interpreting stuff against him in an argumentative way. It's that if there are, in fact, statements that could go either way, somebody can't be – have actual malice if they interpret it the way he doesn't prefer. I'm sorry. I didn't understand. That's okay. I think I understand the point. All right. Thank you, Ms. Green. Mr. Kelly, you have three minutes for rebuttal. Respectfully, Your Honor, I think this argument consumes from the actual context of the real world. We're all living on an app. Look at these terrible tablets. And you draw the stack of any distinction. Again and again, you say this is so that the debate is not cycled. Well, that begs the question. More cycled than what? More cycled than geneticists who are afraid to discuss what they know? More cycled than Nobel Prize-winning scientists who cowed and asked for a kid and left Galileo before the Renaissance church? This whole argument should not get out of the gate. For it's clear that in your times, what you should know is there is a body of valentine's significance out there. If James Bennett of the Taylor case was charged with knowing what he wrote when he entered into the Atlantic, and that body of knowledge was enough to say, you know, you knew there was no link between Lockhart and Taylor. At this stage, you knew there was no link between Lockhart and Taylor. You put it in their interest. You put it in their interest over a hypothetical set of assumptions. I submit to you the New York Times should be held to its own writings on science operations. In this case, they should be held to the truth. They know there is a body of wisdom out there. It's valid. It's not hate. It's not distorted. It's not biased. It's not prejudice. It's not racism. It's just a fact. Do you deny that the views of your client bear a kind of family resemblance to writers who are known as white nationalists or could be accurately described as white nationalists? I don't think I need to deny that. No, but then I guess my question is if, in fact, he does express views that bear a family resemblance or are similar to those views, then if somebody just groups all of those views together, is it really plausible to say that they knew it was false and were acting with actual malice? Well, that's different. It could be whether you're a member or a co-conspirator in some way. That was the context of Gertz, right? They didn't allege your client as a member of a particular group. They just used the term white nationalist, and that's really the issue that we have here. In the Slate article that you cite as the reason where he made a denial in 2018, he said, My heart is with racial nationalism. Isn't that true? Where else did your client deny the term white nationalist? Where else do you allege in your complaint that he said, I deny that I'm a white nationalist, such that they should be potentially – you could prove actual malice? Well, he says, we're called to be here because we consider America to be a specific political entity. We're not white nationalists. If we were to report about whites, we'd be the only bearers of the slightest amount of malice. We're the first white people in America. We consider America to be, as it is, a lost nation. People who can come and assist us. Can I ask you – I mean, you mentioned the Gertz case where there's this accusation that he's a Leninist. So maybe in light of that, maybe you could address the opposing counsel's argument that whenever you characterize somebody as having a certain ideology, it's always sort of arguable and always a matter of opinion. Is that – what do you think about that argument? Well, the Gertz case is significant, sir. I mean, this is – if you go back to Judge Walsh and Curtis at any moment, the shadings of the words are particularly important. In Buckley v. Slatel, you've got an obvious bias case by a partisan writer. He advertises what his biases are. The Welsh articles in Gertz reported to be news articles that were never researched. Just like The New York Times reports to be news articles – they report published news articles that are researched in freedom of those facts – of these allegations. They denied that they're intervening in the news articles. They made that promise to their readers. Isn't there – Mr. Kelly, in the article with the timeline, which is in the fact section of the newspaper, the title of the article is a timeline of Stephen King – Steve King's racist remarks. Doesn't that, as I think Ms. Green highlighted, tell the reader we're already in the realm, even though it's in the news section, as a timeline? It's trying to categorize or describe what the newspaper views as racist remarks of Congressman King. So doesn't that – for context, why is it that important? This – I must say, it struck me as a great irony before a federal court, which for 70 years – Could Congressman King sue and say my comments aren't racist, I'm suing under your position of the law, that that would be a factual statement as to him that he could sue on? Congressman King sued. Because they call him a racist – they say he has racist remarks. Could he sue on that? In the New York – yes, in the New York. All right. In the New York. All right. Thank you. Thank you both. We'll reserve the decision.